UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE GOOGLE ACCOUNT NATE.CURTISBROWN@GMAIL.COM | Case No. 2:25-mj-249-KFW<br><br>**Filed Under Seal Per Local Rule 157.6(a)** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Sean Murphy, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Special Agent with the Federal Bureau of Investigation assigned to the Boston Joint Terrorism Task Force. I have gained training and experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, the exploitation of lawfully obtained evidence and data, and various other procedures. As a Special Agent, I am authorized by law or by a government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of federal criminal laws.

3.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 115(a)(1)(B), and/or Title 18, United States Code, Section 875(c), have been committed by

Nathaniel Curtisbrown. There is also probable cause to search the Google account described in Attachment A for evidence and/or instrumentalities of these crimes further described in Attachment B.

## STATUTORY AUTHORITY

5. Title 18, United States Code, Section 115(a)(1)(B) makes it a crime for anyone who "threatens to assault, kidnap, or murder a United States official, a United States Judge, a federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties."

6. Title 18, United States Code, Section 875(c), makes it a crime for anyone to "transmit[] in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another."

## PROBABLE CAUSE

7. In February 2023, the FBI received a report from a business in Rhode Island (hereinafter: "Company 1") regarding a former employee of Company 1 named Nathaniel Curtisbrown ("Curtisbrown"), DOB xx/xx/1995. It was reported that Curtisbrown made threatening comments or communications towards individuals or employees of Company 1 using the email account: nate.curtisbrown@gmail.com. According to information the FBI obtained from an employee at Company 1, Curtisbrown sent multiple emails to one or more individuals at Company 1 on February 14, 2023, using the email address nate.curtisbrown@gmail.com. For example, in one email, Curtisbrown wrote:

    a. "You will die, as will all those you love, as you made me feel sucidial [sic], unless you can remediate the situation and pay reparations for the damages you caused me."

8. I am aware that on February 17, 2023, as part of the FBI's investigation of the reported threats relating to Company 1, FBI Special Agent AD and a Detective from the Scarborough Police Department went to Curtisbrown's then-residence in Scarborough, Maine, and interviewed Curtisbrown. During that interview, Curtisbrown said that he suffered from bipolar disorder but denied that he was a threat to himself or others. Curtisbrown said that it was obvious that the email address nate.curtisbrown@gmail.com belonged to him. Further, Curtisbrown admitted to sending the threatening messages to employees of Company 1, his former employer.

9. During the interview on February 17, 2023, Special Agent AD admonished Curtisbrown that future threats could result in criminal charges. Curtisbrown was offered law enforcement contact information for mental health referral, which Curtisbrown declined. Curtisbrown agreed not to send any more emails to Company 1. Curtisbrown advised that he did not wish to have further contact with the FBI, unless it was an FBI SWAT team coming to arrest him.

10. After the interview on February 17, 2023, Curtisbrown sent a series of emails to Special Agent AD from the email address nate.curtisbrown@gmail.com. The emails described Curtisbrown's dissatisfaction with the Department of Justice, which he believed had not protected his civil rights, and disparaged Special Agent AD.  In one of the emails to Special Agent AD, on February 22, 2023, Curtisbrown wrote,

    a. "... you [Special Agent AD] should kill yourself for not standing up for me and hurting me through that alone."

11. On March 9, 2023, Special Agent AD spoke telephonically with Curtisbrown. Curtisbrown advised that he was not a threat to others and that he would not contact Company 1 in the future. Curtisbrown also apologized to Special Agent AD for the repeated emails to Special Agent AD and their hostile tone. Subsequently, the investigation was closed in March of 2023.

12. On June 9, 2023, after a period during which he did not contact the FBI, Curtisbrown again contacted Special Agent AD using the email address nate.curtisbrown@gmail.com. Specifically, Curtisbrown sent a series of emails to Special Agent AD at the Special Agent's official fbi.gov email address with the subject line: "I Want To Be Very Clear." The emails contained escalating threats towards Special Agent AD. Specifically, on June 9, 2023, Special Agent AD received the following email from nate.curtisbrown@gmail.com:

    a. "I've asked for your help. I'm done with this. You have all the resources you need to hold people accountable who hurt me. I'm writing this email to let you know if you try and take me away from [Curtisbrown's significant other], come vested the fuck up."

A few minutes later, Special Agent AD received the following email from nate.curtisbrown@gmail.com:

    b. "And if you even think of hurting her, I'll break your fucking neck."

13. On June 11, 2023, Special Agent AD received an email from nate.curtisbrown@gmail.com that said, among other things:

  a. "I'm very close to buying a shotgun as a home defense weapon out of fear of a SWAT raid for speaking up about thus and not saying it in the best way. I'm sorry if that's a problem. If you send SWAT, I'm fighting back. Come yourself without a gun, coward. . ."

14. On June 12, 2023, FBI Special Agent DW was assigned as the case agent to conduct a full investigation into the threatening emails sent by nate.curtisbrown@gmail.com to Special Agent AD.

15. As part of that investigation, on June 14, 2023, FBI agents located Curtisbrown and arrested him in South Portland, Maine. Curtisbrown was charged with intimidating or retaliating against a federal official by threat, in violation of Title 18, United States Code, Sections 115(a)(l)(B) and 115(b)4, in the District of Maine, Case No. 2:23-mj-181. The matter was later dismissed in October 2024.

16. Special Agent DW was part of the arrest team that took Curtisbrown into custody on June 14, 2023. Special Agent DW conducted an in-person interview with Curtisbrown at the FBI's Portland Resident Agency after he was arrested. During that interview, Special Agent DW introduced himself and advised Curtisbrown of his rights. Curtisbrown felt comfortable speaking with the agents and admitted to sending emails containing threatening communications to Special Agent AD. Curtisbrown explained that he used the email address "nate.curtisbrown@gmail.com" because it was his name.

17. Following his arrest in June 2023, Curtisbrown was interviewed by Officer JM from U.S. Probation and Pretrial Services as part of the bail process. Officer JM ultimately recommended that Curtisbrown be released on bail, which he was. The government later dismissed the June 2023 criminal complaint after Curtisbrown entered pre-trial diversion.

18. In February 2024, Officer JM conducted an additional interview of Curtisbrown while performing the duties of a Bail Officer. The purpose of the interview was to get updated information as part of the probation process.

19. Recently, I became aware that Curtisbrown sent emails to individuals from the email address nate.curtisbrown@gmail.com, including Special Agent AD and Officer JM, some of which were threatening in nature.

20. Specifically, on July 16, 2025, the user of email address nate.curtisbrown@gmail.com sent an email to several recipients, including Special Agent AD at his official fbi.gov email address, which included the following language:

   a. "50k and a Secret Service badge in honor of my grandfather or I'll ruin more communities . . . ."

The email continued:

   a. "Run my social: xxx-xx-9367. I am his grandson . . . ."

21. I am aware that the social security number included in this email message is Curtisbrown's social security number.

22. Additionally, on July 16, 2025 the user of email address nate.curtisbrown@gmail.com sent an email to several recipients, including Officer JM, which included the following language:

   a. "Everyone besides [Curtisbrown's significant other] in Maine is put to death by lethal injection, including [Officer JM's last name]."

23. Furthermore, I am aware that on July 16, 2025, Special Agent AD received an email from nate.curtisbrown@gmail.com stating:

   a. "Next time I see him [Special Agent DW's first name] is kill on sight."

24. Special Agent DW is assigned to the Portland, Maine Resident Agency of the FBI's Boston Division. Special Agent AD received this email message on July 16, 2025 while present in the District of Maine.

25. Special Agent DW is, and was on July 16, 2025, a "federal law enforcement officer" within the meaning of Title 18, United States Code, Section 115(a) because he was an "officer, agent, or employee of the United States authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of any violation of Federal criminal law."

26. Based on Curtisbrown's history of using the email address nate.curtisbrown@gmail.com, in addition to a review of the content of the email messages from that account (including more recent emails and an email where Curtisbrown's social security number was included in an email), I have probable cause to believe that Curtisbrown is the user of the email address nate.curtisbrown@gmail.com.

27. A preservation request was sent to Google on July 18, 2023, and again on July 25, 2025, regarding nate.curtisbrown@gmail.com. The email account was utilized for the threatening emails sent to Company 1 and Special Agent AD and was the primary means of communication used in furtherance of the crime.

28. This Google email account and related Google applications may also contain information concerning planning, researching, outlining, and execution of the criminal threats, both past and present. This information may include photos of Special Agent DW's place of employment, vehicle, family members, residence and other information obtained by Curtisbrown to plan out and execute his threats.

29.     The Google applications may also contain communications with others to assist in this criminal activity and the Google searches could indicate the methods, means and plans of Curtisbrown to execute these criminal threats. Google Maps information may contain searches sought to obtain the residence address of Special Agent DW or routes planned for conducting these criminal actions.

## BACKGROUND CONCERNING GOOGLE[1]

30.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

31.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

---

[1]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

32. Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

33. Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

34. The records being sought by Google include those contained in Gmail, Google Maps, Google Trips, Google Photo, Google Chrome, Google Meet, Google Drive, Google Chat Hangout, Google Meet, Google Chat and the media associated with accounts on YouTube.

35. Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact information for that individual will be saved in the user's Google Contacts. Google Voice voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a user logs into their Google Account on the Chrome browser, their subsequent Chrome browser and Google Search activity is associated with that Google Account, depending on user settings.

36. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

37. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

38. Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

39. I am also aware that Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their

mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

40. I am also aware that Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

41. I am also aware Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by

Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

42. In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion. By reviewing the information and data associated with the nate.curtisbrown@gmail.com, it may be possible to determine if Curtisbrown took additional steps regarding the threats he made.

43. Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. Thus, stored communications and files connected to nate.curtisbrown@gmail.com may provide direct evidence of the offenses under investigation.

44. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing

a search warrant at a residence. For example, subscriber information may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation. Geolocation may also assist investigators in understanding if Curtisbrown has ever been near or around Special Agent DW (outside of known interactions) to include work and residence locations.

45. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

46. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. Chrome searches could indicate whether Curtisbrown was taking further steps to plan and execute harm on Special Agent DW. Those searches may include how to obtain a gun or ways to murder or injure people. Based on my training and experience criminals often utilize internet searches to plan their criminal conduct based on the actions of others. They often share these plans with others (via social media or messaging applications) to obtain feedback or guidance. In addition, these email, messaging services and

social media postings can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

47. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

48. Based on the forgoing, I request that the Court issue the proposed search warrant.

49. Given the above-described history with this defendant, there is some potential that records obtained in connection with this warrant may contain information protected by the attorney/client privilege. As a result, the government intends to employ a "filter team" to review potentially protected material before its release to me and the other members of the investigative team.

50. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Sean Murphy
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Jul 30 2025

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
Printed name and title